**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| TIEASE HOLMES, individually and on behalf of all others similarly situated, <br><br>      Plaintiff, <br><br> v. <br><br> GLOCK, INC., a Georgia Corporation; GLOCK Ges.m.b.H, an Austrian entity; JOHN and JANE DOES I through V; ABC CORPORATIONS I-X, XYZ PARTNERSHIPS, SOLE PROPRIETORSHIPS and/or JOINT VENTURES I-X, GUN COMPONENT MANUFACTURERS I-V, <br><br>      Defendants. | Case No._____ <br><br><br><br> **CLASS ACTION COMPLAINT** |

Plaintiff TIEASE HOLMES ("Plaintiff" or "Holmes") brings this action against Defendants GLOCK, INC., a Georgia Corporation; GLOCK Ges.m.b.H, an Austrian entity; JOHN and JANE DOES I through V, ABC CORPORATIONS I-X, XYZ PARTNERSHIPS, SOLE PROPRIETORSHIPS and/or JOINT VENTURES I-X, GUN COMPONENT MANUFACTURERS I-V ("Defendants" or "Glock Defendants"), and alleges as follows:

**INTRODUCTION**

1. Plaintiff brings this class action on behalf of herself, and all other individuals who own certain handguns (the "Class Guns") which were designed, manufactured, assembled, imported, and marketed by Defendants and distributed and sold throughout Illinois.

2. The Class Guns contain at least one defect which renders Defendants' pistols unreasonably dangerous and unfit for their intended use. In short, the gun barrel chambers do

not surround, or support, the bullet sufficiently before firing. This is referred to as the "Unsupported Chamber Defect" (sometimes just the "Defect"). It means that, for every Class Gun, there is a significant chance that one or both of the following things will happen upon pulling the trigger: (1) the brass casing of the bullet will be irreparably damaged, including by creating a bulge out or "smile," thereby damaging the brass casing and making it worthless; and possibly (2) "blow out" or "kaboom," which is when the round/casing blows up or separates and a piece of the casing dislodges. Both the brass damage and the "kaboom" repeatedly and verifiably manifest in the Class Guns.

3.      The Glock Defendants have known about the defect for years yet have failed to sufficiently warn about the dangers of the Class Guns. The Glock Defendants omitted material information bearing on the safety and effectiveness of the Class Guns. Furthermore, the Glock Defendants promised that the Class Guns were reliable and safe for ordinary use and did not contain defects and were not unreasonably dangerous.  But this is not what the Glock Defendants designed, manufactured, sold, and distributed. Rather, the Class Guns are defective  and unreasonably dangerous.

4.      In filing this lawsuit, Plaintiff and the Class seek to hold accountable the Glock Defendants for faulty and dangerous gun designs that were not adequately disclosed, thereby causing an unreasonable safety hazard.

5.      Moreover, Glock has had for many years actual knowledge of the Unsupported Chamber Defect.  But the Glock Defendants have never issued an effective and complete warning to the public, never recalled the Class Guns, and they continue to falsely represent to the public that the Class Guns are safe and without any material defects.  In fact, Glock is aware that casings have been irreparably damaged and that individuals have been seriously injured as a result of

the Unsupported Chamber Defect, and it is only a matter of time before more individuals are seriously injured or killed.

6. In 2021 and 2024, these same allegations plead here survived a motion to dismiss and were certified in *Johnson v. Glock*, 20-cv-8807 (N.D. Cal.) (J. Orrick). In its order on the motion to dismiss, the court held:

> All of these taken together—the specific incidents and lawsuits, the many complaints, and the widely-seen online videos—plausibly show that Glock had knowledge of the alleged defect.5 As explained above, I reject many of Glock's particular arguments. But even if Glock were right on some of them—for instance, even if the complaints standing alone were insufficient—in determining whether a plaintiff has alleged pre-sale knowledge, the inquiry necessarily focuses on all possible sources of that knowledge put together.

Order on Motion to Dismiss, Sept. 22, 2021, Dkt. 73, at page 12. The court also noted, at page 18, that while:

> Glock contends that Johnson has not pleaded "any facts to permit the Court to determine that alleged harm to brass casings amount to more than de minimis damages." Mot. 22. He has: He alleges that they are normally usable but became unusable once damaged. TAC ¶¶ 24–25. And he alleges that this causes monetary losses.

In granting class certification, the court found:

> Glock's defenses are common questions that can be resolved on a classwide basis. Glock may well prevail on the merits, but ***plaintiff has shown enough evidence in support of his theories as well as the existence of predominant, common questions, to satisfy the requirements of Rule 23***.

Order on Class Certification, September 30, 2024, Dkt. 181 at page 2 (emphasis added). The court also certified, at page 30, the following class:

> The following class is certified: Consumers who purchased any Glock pistol designed to shoot the following calibers: (1) 10mm, (2) 40 S&W, (3) 9mm, (4) 45 ACP, (5) 45 GAP, (6) .380, and (7) .357 Sig. in the State of California since introduced into the stream of commerce by Defendants.

7.      On October 15, 2024, the Glock Defendants filed a Federal Rule of Civil Procedure 23(f) petition for permission to appeal with the Ninth Circuit Court of Appeals. *Glock, et al. v. Johnson*, 24-6267 (9th Cir. 2024), Dkt. 1.

8.      On December 12, 2025, the petition for permission to appeal was denied. *See* docket.

9.      According to the redacted answer filed by *Johnson* in opposition to the petition for permission to appeal, the Defendants had knowledge of the defects. *See* Dkt. 11.1 at pages 4-8:

> B. Glock Does Not Dispute Its Knowledge of the Defect. Glock admits it has known of the safety hazard inherent in its design, which is a common issue that predominates in this case. DE 156-3 at 13:13-17 (admitting Glock has always known that overpressurized rounds could lead to catastrophic failure based on intended design); Order at 14:6-10 (citing DE 145-6 at 224-225; DE 145-4 at 108-109).

> C. Glock Has Concealed the Defect for Decades. Glock has never disclosed the safety hazard caused by the UCD. Specifically, Glock has never disclosed the fact that its UCD can cause a catastrophic failure even when exposed to factory ammunition. Indeed, to this day Glock denies that catastrophic failures are caused by the UCD, which is the critical safety issue that Glock has concealed from the consuming public. DE 145-6 at 254-256. Glock admits that it does not disclose the UCD and the safety hazard it causes to actual or prospective customers. DE 145-4 at 108-109, 132-133; DE 145-6 at 224- 225; DE 156-3 at 3:26-4:4. Glock does not disclose its "Safety Valve"/UCD in its buyer's guide, user's manual, nor safety materials provided at the time of sale. DE 145-6 at 224-230. It does not explain the UCD or inherent safety hazard on its website, promotional videos, or in any of its advertisements. Id. Glock admits it intentionally conceals the existence of the "Safety Valve"/UCD from consumers because they do not want the public to know about it.

10.      At all times relevant to this action, the Glock Defendants had a duty to disclose and warn Plaintiff and the Class truthfully and accurately, and to not conceal or misrepresent such truth, about the Unsupported Chamber Defect.  Notwithstanding this duty, and in violation thereof, the Glock Defendants carelessly failed to disclose and warn Plaintiff and the Class, and concealed and misrepresented the truth about the Class Guns and the Defect. Defendants did

4

these things with the intent to deceive Plaintiff, the Class, and public – who did not know and could not reasonably be expected to know of the Defect themselves because the Defect is latent and not apparent. Indeed, the cause of the Defect originates from the common design and manufacture of the Class Guns, which is not common knowledge or otherwise well-known or appreciated. Plaintiff and the Class would not and could not know of the Defect by the exercise of reasonable diligence.

11. At all times relevant to this action, the Glock Defendants have willfully, knowingly, and/or recklessly committed unfair or deceptive acts or practices in Illinois for the express willful purpose of wrongfully concealing the Unsupported Chamber Defect and their knowledge of it in violation of Illinois law. Plaintiff now brings this action on behalf of herself and her fellow Illinois purchasers of the Class Guns.

**PARTIES**

12. Plaintiff Tiease Holmes is over the age of 21 and is a resident and citizen of Chicago, Illinois. Plaintiff owns a Class Gun, a Glock 9MM, Serial Number C436556, which was designed, manufactured, assembled, tested, marketed, imported, warranted, and distributed by the Glock Defendants. Plaintiff purchased her Class Gun in 2022, from an authorized U.S. Glock dealer in Riverdale, Illinois. Unbeknownst to Plaintiff at the time that she purchased and took possession of her Class Gun, it was defective and unreasonably dangerous. Glock's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, and selling, the defective and dangerous Class Gun has caused Plaintiff out-of-pocket loss, loss of use, and future repair costs. Plaintiff purchased her Class Gun under the mistaken belief that it was free of defects and reasonably safe for use. Plaintiff would not have purchased the Class Gun had she been aware of the design defects and dangerous condition of the Class

Guns. Plaintiff sought to purchase a handgun that was safe and free of defects. However, Plaintiff did not get the benefit of her purchase because the product is defective.

13. Ms. Holmes was unable to make this discovery earlier of the defect alleged here. She was not made aware of the defects with her Glock by Defendants.

14. Defendant Glock Ges.m.b.H is an Austrian corporation that designs, manufactures, and tests the Class Guns and other firearms in Austria under the "Glock" brand name and distributes the Class Guns and other firearms in this District and throughout Illinois under the "Glock" brand name via Defendant Glock, Inc.

15. Defendant Glock, Inc. is a Georgia corporation that is licensed to and does business in this District and throughout Illinois.

16. The Glock Defendants are so intertwined contractually for each other's liabilities that they are essentially one entity regarding the allegations in this Complaint.

17. At all times herein mentioned, each of the Glock Defendants were the agents and employees of each of the remaining Defendants and, in doing the things alleged, was at all times acting within the purpose, course, and scope of said agency or employment with the knowledge, consent, permission, and subsequent ratification of each of the other Defendants.

18. The Glock Defendants work jointly to target consumers in the State of Illinois, and in this District, for sales of Class Guns and other products. The Glock Defendants work directly with manufacturers, dealers, retailers, distributors, and other entities located in this District, and throughout Illinois, to effectuate the goal of marketing and selling the Class Guns, availing themselves to the benefits of the laws of Illinois. Each Defendant is the alter-ego of the other because the Defendants share funds with one another, co-mingle business accounts,

perform acts on one another's behalf, and engage in other acts indicative of a false separation between their corporate structure.

## JURISDICTION AND VENUE

19. This Court has original jurisdiction pursuant to 28 U.S.C. §1332(d)(2). The matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000 and is a class action in which there are in excess of 100 class members and some members of the Class are citizens of a state different from Defendants.

20. This Court has personal jurisdiction over Defendants because the corporate Defendants are authorized to conduct and do business in Illinois, including this District and sell their products to consumers in Illinois and in this District. As a result, all Defendants have sufficient minimum contacts with this State and/or sufficiently availed themselves of the markets in this State through their promotion, sales, distribution and marketing within this State, including this District, to render the exercise of jurisdiction by this Court permissible.

21. Venue is proper in this Court pursuant to 28 U.S.C. §§1391(a) and (b) because a substantial part of the events giving rise to Plaintiff's and members of the Class's claims occurred while she and they resided in this judicial district. Venue is also proper under 18 U.S.C. §1965(a) because Defendant transacts substantial business in this District.

## FACTUAL ALLEGATIONS COMMON TO THE CLASS

22. Glock Ges.m.b.H began doing business in 1981. The Glock Defendants have continuously, since then, including on their website, boasted about Glock's "profound series of engineering feats," its "revolutionary" designs, and its "culture of continuous improvement." Glock has stated, "[t]he continuous pursuit of perfection in every facet of design,

engineering, and manufacturing, has firmly established GLOCK pistols as the standard by which all others are compared."[1]

> Gaston Glock built his company from the ground up on a foundation of exceptional and exacting engineering. His demanding standards can be seen today in the design of every GLOCK pistol, in the choice of materials used, and in every step of the manufacturing process.[2] By revolutionizing firearms production in the early 1980´s, GLOCK became the worldwide leading pistol manufacturer and brought its manufacturing process to perfection.[3]

23.     At all times since at least 2016, the Glock Defendants openly represented to the public, and continue to represent today, including on Glock's website, that their handguns, including the Class Guns, are reliable and safe for use. "GLOCK is committed to delivering firearms with uncompromising safety, reliability, and quality. These GLOCK firearms are made with the user in mind. Whether you're here for competitive shooting, self-defense, or recreation – there is a GLOCK pistol for you. The safety and simplicity of GLOCK firearms means confidence for experienced and new shooters alike.[4]"

24.     The reality, though, is that all the Class Guns are defective and inherently and unreasonably dangerous to the user.[5] More specifically, the Class Guns are 1) Glock branded, and 2) semi-automatic. A semi-automatic pistol is a firearm which fires, extracts, ejects and reloads once for each pull and release of the trigger. The Class Guns, furthermore, have the Unsupported

---

[1] https://us.glock.com/en/about/brand/glock-brand

[2] https://us.glock.com/en/about/technology

[3] *Id.*

[4] https://us.glock.com/en/products/commercial-firearms

[5] Of course, a gun is an inherently dangerous item in many respects, especially for anyone standing in front of the person firing the gun. This is not in dispute. Thus, when a seller or manufacturer says its guns are "safe," as Glock did here and continues to do today, it necessarily means to say that its guns will *operate* safely for the *holder* of the gun, *e.g.*, it is not likely to backfire or blow up or shoot a bullet or fragments backwards or otherwise injure the holder. This is what it means, and what the reasonable gun purchaser understands, when a manufacturer says their gun is "safe."

Chamber Defect. Namely, the gun barrel chamber does not fully enclose the bullet casing sufficiently before firing. The feed ramp of Class Guns extends too far into the chamber, causing the chamber to lack adequate support for the round/casing. In turn, the force of a fired round exerts unreasonable pressures upon the round/casing in the 6 o'clock position. Below are pictures illustrating a supported (left side) versus unsupported (right side) chamber, and the resulting Glock "Smile" from an Unsupported Chamber Defect. Note how much more of the brass is surrounded or supported in the photo on the left, versus how much more of the brass is exposed on the right:

Supported                                        Unsupported



9

25. The Class Guns with the Unsupported Chamber Defect include, but are not limited to, Illinois consumers who purchased any Glock pistol designed to shoot the following calibers: (1) 10mm, (2) 40 S&W, (3) 9mm, (4) 45 ACP, (5) 45 GAP, (6) .380, and (7) .357 Sig.

26. The design of the Unsupported Chamber Defect is common to all Class Guns and creates the same defect in all Class Guns. By purchasing and firing Class Guns, Plaintiff and the Class experienced and were harmed by the Unsupported Chamber Defect. The use and/or maintenance of the Class Guns by Plaintiff and the Class have no effect on the defective design of the Class Guns and the damages resulting from the defective design.

27. The Defect, in turn, can create one or both of the following: a) irreparable damage to the brass bullet casing including, but not limited to, a "bulge" or "smile" as mentioned above; and b) a blowout or kaboom.

28. First, the Unsupported Chamber Defect causes damage to the brass casing of the round. Sometimes the damage is not noticeable by the naked eye or unless the viewer is an expert, e.g., in ballistics or metallurgy. Nonetheless, the damages – even when not noticeable by the lay consumer – are present and significant. Often, the damage to the brass is severe enough to manifest by forming a bulge or "smile" on the casing after being fired that mirrors the outline of the unsupported chamber. This brass damage affects newly manufactured, reloaded, and remanufactured brass casings. The Defect renders damage to the brass casings which is non-defective property. The damage to the brass casings, because of the Defect in the Class Guns, is physical injury to property that stands apart from the manifestation of the Unsupported Chamber Defect itself. The brass damage, including the "Glock Smile" or "Glock Bulge," is physical injury to property other than the Class Guns themselves. Below are pictures illustrating brass damage severe enough to cause a bulge or smile.

10



29.     The damage to the brass casings caused by the Defect renders the brass casings useless, nonfunctional, and valueless.

30.     Importantly, spent brass casings usually have value. They are not merely refuse. Consumer spent money on the brass casings.[6] But as a result of the damage to the brass casings caused by the Unsupported Chamber Defect, consumers have lost the ability to sell or reuse the brass casings and can no longer use the brass casings to make reloaded ammunition. The damage to the brass casings because of the Defect in the Class Guns prevents consumers from realizing the intended use of the brass casings. As a result of the Defect in the Class Guns, and damage to the brass casings, the brass casings have no value, and consumers can no longer receive the economic benefit of re-selling them or reusing the brass casings by reloading the brass casings and firing reloaded ammunition made from the used brass casings. Reloaded ammunition is substantially cheaper as factory ammunition has become increasingly cost prohibitive due to ongoing supply shortages. The brass casings, after being fired through the Class Guns, are

---

[6] *See* Scalpers Are Driving Up Ammunition Costs and Contributing to the Ammo Shortage | Washington Gun Law; https://www.forbes.com/sites/aaronsmith/2021/03/04/gun-owners-take-up-reloading-to-sidestep-ammo-shortage-but-it-may-be-too-late/?sh=5b2ebb1c2161; Inside the World of D.I.Y. Ammunition, https://www.nytimes.com/2018/10/05/us/3d-printed-guns-homemade-ammunition.html, The New York Times (all last accessed on February 27, 2026).

not a serviceable piece of equipment that consumers would have otherwise been able to use and get a benefit from had the brass casing been fired from a gun that did not contain the Unsupported Chamber Defect.

31.     Second, a blowout or kaboom occurs when the round/casing blows up or separates and a piece of the casing dislodges, which can cause severe injury to the shooter's hand or other body parts.  These pictures depict kabooms in other Glocks as well as blown out rounds:





12

 

32. The Unsupported Chamber Defect is a design defect common to all Class Guns. The barrels in the Class Guns are not significantly different across the various gun models or even across the manufacturing years. Moreover, the Defect is latent such that if the Class Guns work as designed, they are still defective, and Plaintiff and the Class would still be due relief.

33. Finally, neither brass damage (including smiles or bulges), nor kabooms, are the normal result of firing a handgun, or of the forces of gun powder exploding. Moreover, when using typical factory ammunition, the brass damage described in this complaint, and especially a kaboom, will only happen when firing a Class Gun because of the Unsupported Chamber Defect. And while improperly "reloaded" ammunition might increase the chances of brass damage or kabooms as alleged in this complaint, the Unsupported Chamber Defect nonetheless, and by itself, increases the risk, frequency, and severity of the brass damage or kabooms. Stated differently, a reasonable consumer can shoot defective or improperly reloaded ammunition without any resulting damage out of another gun not having the Defect – like a Sig Sauer or a Smith & Wesson – but if they shoot that same ammunition out of a Class Gun, they will then experience resulting damage such as brass damage (e.g. a smile or bulge) or a kaboom.

13

## GLOCK HAS KNOWN ABOUT THE DEFECT FOR YEARS

34. The Glock Defendants have knowingly manufactured, marketed, and sold thousands of defective Class Guns with the Unsupported Chamber Defect to consumers throughout Illinois.

35. Indeed, Glock has known about the Defect and its potential to damage brass and create smiles or kabooms, for years.

36. For example, in 2004, the Portland Police Department made a claim against Glock after two .45-caliber Glock Model 21 pistols (Class Guns) exploded in the hands of two of Portland PD's officers. One of the officers involved in that incident then separately sued Glock, along with ammunition manufacturers, for over $50M arising out of his severe personal injuries. These exploded guns were Glass Guns that had the Unsupported Chamber Defect and it was the Unsupported Chamber Defect that caused the kabooms.

37. Across the country in 2007, two more Glocks in service by the Winter Haven, FL police department kaboomed or exploded during two separate training incidents one year apart, causing the Winter Haven Police Chief to discontinue use of the Glock handguns in question over safety concerns. Upon information and belief, these exploded guns were Class Guns that had the Unsupported Chamber Defect and it was the Unsupported Chamber Defect that caused the kabooms.

38. In February of 2009, an officer in training for the City of Miami Police Department was severely injured when another Class Gun – a Glock 22 – exploded in the officer's hand sending metal fragments into the officer's hand and face. The officer subsequently sued Glock. Again, on information and belief, this exploded gun was a Class Gun that had the Unsupported Chamber Defect and it was the Unsupported Chamber Defect that caused

14

the kaboom. Upon information and belief, Glock entered a confidential settlement with the officer, but never fixed or warned of the Defect.

39. In Harris County Texas (where Houston is), a sheriff's deputy was severely injured in March of 2017 when his Class Gun kaboomed in his hand sending shrapnel back into his hand and face. Again, this exploded gun was a Class Gun that had the Unsupported Chamber Defect and it was the Unsupported Chamber Defect that caused the kaboom.

40. Numerous private citizens have also experienced the Defect and sued Glock over it. For example, in 2005, a New York resident sued Glock alleging his .40 caliber Glock 22 (a Class Gun) exploded in his hand while firing factory ammunition at a shooting range.

41. In 2015, a Massachusetts' resident experiencing a "kaboom" in a Class Gun on a 2012 hunting trip. The gun exploded/blew apart while the plaintiff was holding the gun and firing it. The recoil and force from the exploding gun violently spun around the plaintiff's body and knocked him to the ground. Shrapnel from the gun struck the plaintiff's face and body.

42. In 2021 and 2024, these same allegations plead here survived a motion to dismiss and were certified in *Johnson v. Glock*, 20-cv-8807 (N.D. Cal.) (J. Orrick). In its order on the motion to dismiss, the court held:

> All of these taken together—the specific incidents and lawsuits, the many complaints, and the widely-seen online videos—plausibly show that Glock had knowledge of the alleged defect.5 As explained above, I reject many of Glock's particular arguments. But even if Glock were right on some of them—for instance, even if the complaints standing alone were insufficient—in determining whether a plaintiff has alleged pre-sale knowledge, the inquiry necessarily focuses on all possible sources of that knowledge put together.

Order on Motion to Dismiss, Sept. 22, 2021, Dkt. 73, at page 12. The court also noted, at page 18, that while:

15

"Glock contends that Johnson has not pleaded "any facts to permit the Court to determine that alleged harm to brass casings amount to more than de minimis damages." Mot. 22. He has: He alleges that they are normally usable but became unusable once damaged. TAC ¶¶ 24–25. And he alleges that this causes monetary losses.

In granting class certification, the court found:

Glock's defenses are common questions that can be resolved on a classwide basis. Glock may well prevail on the merits, but plaintiff has shown enough evidence in support of his theories as well as the existence of predominant, common questions, to satisfy the requirements of Rule 23.

Order on Class Certification, September 30, 2024, Dkt. 181 at page 2. The court also certified, at page 30, the following class:

The following class is certified: Consumers who purchased any Glock pistol designed to shoot the following calibers: (1) 10mm, (2) 40 S&W, (3) 9mm, (4) 45 ACP, (5) 45 GAP, (6) .380, and (7) .357 Sig. in the State of California since introduced into the stream of commerce by Defendants.

43. On October 15, 2024, the Glock Defendants filed a Federal Rule of Civil Procedure 23(f) petition for permission to appeal with the Ninth Circuit Court of Appeals. *Glock, et al. v. Johnson*, 24-6267 (9th Cir. 2024), Dkt. 1.

44. On December 12, 2025, the petition for permission to appeal filed by the Glock Defendants was denied. *See* docket.

45. According to the redacted answer filed by *Johnson* in opposition to the petition for permission to appeal, the Glock Defendants had knowledge of the defects alleged here. *See* Dkt. 11.1 at pages 4-8:

B. Glock Does Not Dispute Its Knowledge of the Defect. Glock admits it has known of the safety hazard inherent in its design, which is a common issue that predominates in this case. DE 156-3 at 13:13-17 (admitting Glock has always known that overpressurized rounds could lead to catastrophic failure based on intended design); Order at 14:6-10 (citing DE 145-6 at 224-225; DE 145-4 at 108-109).

C. Glock Has Concealed the Defect for Decades. Glock has never disclosed the safety hazard caused by the UCD. Specifically, Glock has never disclosed the fact

that its UCD can cause a catastrophic failure even when exposed to factory ammunition. Indeed, to this day Glock denies that catastrophic failures are caused by the UCD, which is the critical safety issue that Glock has concealed from the consuming public. DE 145-6 at 254-256. Glock admits that it does not disclose the UCD and the safety hazard it causes to actual or prospective customers. DE 145-4 at 108-109, 132-133; DE 145-6 at 224- 225; DE 156-3 at 3:26-4:4. Glock does not disclose its "Safety Valve"/UCD in its buyer's guide, user's manual, nor safety materials provided at the time of sale. DE 145-6 at 224-230. It does not explain the UCD or inherent safety hazard on its website, promotional videos, or in any of its advertisements. Id. Glock admits it intentionally conceals the existence of the "Safety Valve"/UCD from consumers because they do not want the public to know about it.

46.     Upon information and belief, many more claims, demands, and lawsuits have been filed by Glock. In addition, owners are able to send claims and/ or reports (or even the pistols themselves or parts) back to Glock when suffering problems related to the allegations here. Glock presumably maintains copies and records or all and any complaints and/ or reports it received.

47.     Glock has intentionally hidden these critical facts about the Class Guns and the Defect.  Glock has never publicly acknowledged the Defect and specifically denies it.  Glock has refused and continues to refuse to warn the public despite the Glock Defendants' knowledge of the Defect. In short, the Class Guns are defective and inherently dangerous, and the Glock Defendants have known about the unsupported Chamber Defect for years but have allowed the Class Guns to remain in the hands of unsuspecting gun owners to the imminent risk of harm to the owners of the Class Guns and the public.

48.     Despite knowledge about the Unsupported Chamber Defect, the Glock Defendants consciously and intentionally decided not to recall and/or retrofit the defective Class Guns which they know are unreasonably dangerous and defective.

49.     Despite a wealth of information Glock has regarding the defective design of the Class Guns as described herein, Glock has not undertaken any effort to inform the public

17

and/or individuals who own Class Guns about the Unsupported Chamber Defect, or to issue any recalls and replace and/or repair and/or retrofit the Class Guns.

50.     Plaintiff filed this Class Action Complaint in order to obtain declaratory relief and compensation and to force the Glock Defendants to act as responsible corporate citizens by educating their customers, the lawful possessors of the Class Guns, and the public about the dangers of the Class Guns, repairing the Unsupported Chamber Defect in the Class Guns, or paying to allow the Plaintiff and the Class to replace the Class Guns and/or repair and replace the Defect in the Class Guns on their own.

51.     Plaintiff did not receive the benefit of purchasing a gun that was safe for ordinary use and free from defects.

### CLASS ACTION ALLEGATIONS

52.     Plaintiff re-alleges and re-incorporates all preceding paragraphs

53.     Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of her claims on a class wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claim.

54.     This action satisfies the class action requirements of Federal Rule of Civil Procedure Rule 23.

55.     NUMEROSITY. The Class is composed of numerous persons across Illinois, including this District, the joinder of whom in one action is impractical.  While the exact number and identity of the Class members are not presently known, they can be identified through the review of records in the Glock Defendants' possession, custody and control, and/or through other formal discovery, including, but not limited to, sales receipts, sales records, and registration records.  Plaintiff is informed and believes that thousands of Class Guns with the Unsupported

Chamber Defect have been manufactured and sold in Illinois. Consequently, the individuals in the Class are so numerous that the sheer number of aggrieved persons makes joinder of all such persons impracticable, and the disposition of their claims in a class action, rather than in individual actions, will benefit the parties and the Court and is the most efficient and fair way to resolve the controversy.

56. COMMONALITY. There are predominant common questions and answers of law and fact and a community of interest among Plaintiff and the claims of the Class as follows:

a. Whether the Glock Defendants engaged in the conduct alleged herein;

b. Whether the common design of the Class Guns as described is defective;

c. Whether the common design of the Class Guns as described is defective because the feed ramp of the handgun's chamber is too long, and extends into the chamber, causing the chamber to lack adequate support for the round/casing causing the force of a fired round to exert unreasonable pressures upon the round/casing in the 6 o'clock position.

d. Whether the common design of the Class Guns as described is defective because the defects create a "blow out" or "Kaboom," causing the casing to fail, separate, and dislodge at the 6 o'clock position.

e. Whether the common design of the Class Guns as described is defective because it causes damage to other property including, but not limited to, the brass casing.

f. Whether the Glock Defendants have been wrongfully and/or unjustly enriched as a result of the conduct alleged herein;

g. Whether Plaintiff and the Class are entitled to equitable relief, including but not limited to restitution.

19

h.  Whether the design or manufacturing of the Class Guns can cause the Unsupported Chamber Defect, rendering the Class Guns not suitable for their intended use;

i.  Whether the Glock Defendants knew or should have known that the Class Guns were defective;

j.  Whether the Glock Defendants had a duty to Plaintiff and the Class to disclose the true nature of the Class Guns;

k.  Whether the Glock Defendants had a duty to recall the Class Guns;

l.  Whether the Glock Defendants falsely represented that the Class Guns were of a certain standard, quality, and grade, when in fact, they were not;

m.  Whether the Glock Defendants suppressed and concealed material information regarding the true characteristics and defective nature of the Class Guns;

n.  Whether the Glock Defendants' false representations and suppression of the Defect was knowing, intentional, reckless, and/or malicious;

o.  Whether Plaintiff and the Class are entitled to compensatory, statutory, punitive, exemplary, and/or other forms of damages, and/or other monetary relief and, if so, in what amount;

p.  Whether the Glock Defendants were required to notify the owners of Class Guns regarding the Unsupported Chamber Defect and repair and/or retrofit the Class Guns; and

q.  Whether Plaintiff and the Class are entitled to an order: (1) permanently enjoining Glock from manufacturing, assembling, importing, marketing, advertising, distributing, and selling Class Guns, (2) requiring Glock to recall all Class Guns, and (3) requiring Glock to compensate Plaintiff and the Class.

20

57. ADEQUACY OF REPRESENTATION. Plaintiff will fairly and adequately protect the interest of the Class members and has no interests antagonistic to those of the Class. Plaintiff has retained counsel and law firms that are experienced in the prosecution of complex class actions.

58. PREDOMINANCE & SUPERIORITY. This action is appropriate for certification because questions of law and fact common to the Class predominate over questions affecting only individual members, and class treatment is superior to other available methods for the fair and efficient adjudication of this controversy, since individual joinder of Class members is impracticable. The common liability issues in this class action may be resolved efficiently on a class-wide basis. Should individual Class members be required to bring separate actions, assuming Class members were aware of the latent Unsupported Chamber Defect, this Court and/or courts throughout Illinois would be confronted with a multiplicity of lawsuits burdening the court system while also creating the risk of inconsistent rulings and contradictory judgments. In contrast to proceeding on a case-by-case basis, in which inconsistent results will magnify the delay and expense to all parties and the court system, this class action presents far fewer management difficulties while providing unitary adjudication, economies of scale and comprehensive supervision by a single court. The common design Defect of the Class Guns are latent, and the Class Guns are defective in a way that would not be apparent to Plaintiff and the Class. As a result, the Class is unaware of the Defect and their claims against the Glock Defendants as a result of the latent Defect; therefore, without notice of the Defect, a failure of justice will occur in the absence of a class action.

59. Plaintiff, therefore, seeks certification of the following Classes of persons:

Consumers in the State of Illinois who purchased any Glock pistol designed to shoot the following calibers: (1) 10mm, (2) 40 S&W, (3) 9mm, (4) 45 ACP, (5) 45 GAP, (6) .380, and (7) .357 Sig. and former owners that purchased the same.

And/or in the alternative:

Consumer in the United States who purchased any Glock pistol designed to shoot the following calibers: (1) 10mm, (2) 40 S&W, (3) 9mm, (4) 45 ACP, (5) 45 GAP, (6) .380, and (7) .357 Sig. and former owners that purchased the same.

60.     The Class excludes the Glock Defendants, their officers, directors, agents, trustees, parents, children, corporations, trusts, representatives, employees, principals, servants, partners, joint ventures, or entities controlled by the Glock Defendants, and their heirs, successors, assigns, or other persons or entities related to or affiliated with the Glock Defendants and/or their officers and/or directors, or any of them; the Judge assigned to this action, and any member of the Judge's immediate family; and persons who have suffered or claimed to have suffered physical injury  a result of a defective Class Gun.

## ESTOPPEL & TOLLING OF THE STATUTES OF LIMITATIONS

### A.     Continuing Act Tolling

61.     Since at least 2010, the Glock Defendants continuously marketed and sold the defective Class Guns to unsuspecting customers.  The Glock Defendants continuously represented and warranted the Class Guns as safe and dependable despite knowing about the Unsupported Chamber Defect.  By making these false representations and failing to disclose the existence of the Unsupported Chamber Defect in the Class Guns, the Glock Defendants engaged in a continuing wrong, exposing consumers over and over again to risk of injury and death, rendering inapplicable any statute of limitations.

62.     The Glock Defendants' knowledge of the Unsupported Chamber Defect is evidenced by numerous complaints by consumers, many of whom reported contacting Glock

about the Defect. Other complainants reported taking their guns to Glock dealers, who are agents of Glock and, on information and belief, report consumer complaints back to Glock.

63.     The Glock Defendants had continuing knowledge of the Unsupported Chamber Defect and the dangers it posed yet continued to market and sell the Class Guns to Plaintiff and the Class.

**B.     Fraudulent Concealment Tolling**

64.     The Glock Defendants had a duty to disclose to Plaintiff and the Class the true quality and nature of the Class Guns, that the Class Guns had the Unsupported Chamber Defect; and that the Unsupported Chamber Defect requires repairs, poses a safety risk, and reduces the intrinsic and resale value of the affected guns.

65.     The Glock Defendants knew, or were reckless or negligent in not knowing, that the Class Guns contain the Unsupported Chamber Defect, as alleged herein.

66.     The Glock Defendants concealed and omitted the Defect while making representations about the safety, dependability, and other attributes of the Class Guns, as alleged herein.

67.     Despite their knowledge of the Unsupported Chamber Defect, the Glock Defendants failed to disclose and concealed this material information from Plaintiff and the other Class members, and instead continued to market the Class Guns as safe and dependable.

68.     The purpose of the Glock Defendants' concealment of the Unsupported Chamber Defect was to prevent Plaintiff and the other Class members from seeking redress.

69.     Plaintiff and the Class justifiably relied on the Glock Defendants to disclose the existence of dangerous defects, including the Unsupported Chamber Defect, in the Class Guns

that they purchased. The Defect was not discoverable by Plaintiff and the Class through reasonable efforts.

70.     Any applicable statute of limitations has been tolled by the Glock Defendants' knowledge, active concealment, and denial of the facts alleged herein, which behavior is ongoing.

### C.     Discovery Rule Tolling

71.     Through the exercise of reasonable diligence, Plaintiff and the Class could not have discovered that the Glock Defendants were concealing and misrepresenting the existence of the Unsupported Chamber Defect, which is latent in the Class Guns, and the risks it posed.

72.     Plaintiff and the Class could not have reasonably discovered, and could not have known the facts that would have caused a reasonable person to suspect, that the Glock Defendants failed to disclose material information within their knowledge about a dangerous defect.

### CLAIMS FOR RELIEF

### COUNT ONE

**VIOLATION OF THE ILLINOIS CONSUMER FRAUD AND
DECEPTIVE BUSINESS PRACTICES ACT
(815 Ill. Comp. Stat. 505/1 *et seq.*)**

73.     Plaintiff re-alleges and re-incorporates all preceding paragraphs.

74.     The Glock Defendants are "persons" as defined by 815 Ill. Comp. Stat. 505/1(c).

75.     Plaintiff and the Class members are "consumers" within the meaning of 815 Ill. Comp. Stat. 505/1(e) because they purchased Class Guns for personal, family, or household use.

76.     The sale of Class Guns to Plaintiff and the putative Class members is a "sale" as defined by 815 Ill. Comp. Stat. 505/1(d).

24

77. The Illinois consumer protection statute (815 Ill. Comp. Stat. 505/1, *et seq.*) and similar laws in other states, prohibits any "unlawful," "fraudulent" or "unfair" business acts or practice and any false or misleading advertising.

78. The Glock Defendants' acts and practices, which were intended to result, and which did result, in the sale of Class Guns, violate 815 Ill. Comp. Stat. 505/1, *et seq.* for at least the following reasons:

   a. The Glock Defendants represented that the Class Guns have characteristics, uses or benefits which they do not have;

   b. The Glock Defendants advertised their goods with intent to not sell them as advertised;

   c. The Glock Defendants represented that their products are of a particular standard, quality, or grade when they are not; and

   d. The Glock Defendants represented that their goods have been supplied in accordance with a previous representation when they have not.

79. By failing to disclose and concealing the defective nature of the Class Guns from Plaintiff and the Class members, the Glock Defendants violated 815 Ill. Comp. Stat. 505/1, *et seq.* as they represented that the Class Guns had characteristics and benefits that they do not have, and represented that the Class Guns and their feed ramp/chamber components were of a particular standard, quality, or grade when they were of another.

80. The Glock Defendants' unfair and deceptive acts or practices occurred repeatedly in Defendants' trade or business, were capable of deceiving a substantial portion of the purchasing public, and imposed a serious risk on the public.

81.     The Glock Defendants knew the Class Guns suffered from the Unsupported Chamber Defect, were defectively designed or manufactured, and were not suitable for their intended use. The Defect is in each of the Class Guns at purchase but may not have been discovered by putative Class members until months, or years, after the purchase.

82.     As a result of the Glock Defendants' omissions or of their reliance on the Glock Defendants' misrepresentations, owners of the Class Guns suffered injury in fact and suffered an ascertainable loss of money, property, and/or value of the Class Guns.

83.     The Glock Defendants were under a duty to Plaintiff and the Class members to disclose the defective nature of the Class Guns and/or associated repair costs because the Glock Defendants were in a superior position to know the true state of facts about the Unsupported Chamber Defect in the Class Guns and Plaintiff and the Class members could not reasonably have been expected to learn or discover that their guns had a dangerous safety defect until it manifested.

84.     In failing to disclose the defective nature of the Class Guns, the Glock Defendants knowingly and intentionally concealed material facts and breached their duty not to do so.

85.     A reasonable consumer would have considered the facts the Glock Defendants concealed or did not disclose to Plaintiff and the Class members to be material in deciding whether to purchase the Class Guns or pay less for them.

86.     Plaintiff and the Class members are reasonable consumers who do not expect their guns to experience a "blow out" or "Kaboom" due to an unsupported chamber or the Defect.  They likewise do not expect their guns to cause damage to other property including, but not limited to, brass casings. This is the reasonable and objective consumer expectation relating to consumer guns.

26

87.     As a result of the Glock Defendants' conduct, Plaintiff and the Class members were harmed and suffered actual damages.

88.     As a direct and proximate result of the Glock Defendants' unfair and deceptive acts or practices, Plaintiff and the Class members suffered and will continue to suffer actual damages.

89.     Plaintiff, on behalf of herself and all other similarly situated Illinois consumers, and as appropriate, on behalf of the general public of the State of Illinois, seeks restitution of all money obtained from Plaintiff and the members of the Class collected as a result of Defendant's consumer frauds.

## COUNT TWO

### FRAUDULENT OMISSION

90.     Plaintiff re-alleges and re-incorporates all preceding paragraphs.

91.     The Glock Defendants were aware of the Unsupported Chamber Defect within the Class Guns when the Class Guns were marketed and sold to Plaintiff and the other Class members.

92.     Having been aware of the Unsupported Chamber Defect within the Class Guns and having known that Plaintiff and the other Class members could not have reasonably been expected to know of the Defect, the Glock Defendants had a duty to disclose the Defect to Plaintiff and the other Class members in connection with the sale of the Class Guns.

93.     The Glock Defendants did not disclose the Unsupported Chamber Defect to Plaintiff and the other members of the Class in connection with the sale of the Class Guns.

94.     For the reasons set forth above, the Unsupported Chamber Defect within the Class Guns comprises material information with respect to the sale of the Class Guns.

27

95.    In purchasing the Class Guns, Plaintiff and the other members of the Class reasonably relied on the Glock Defendants to disclose known material defects with respect to the Class Guns.

96.    Had Plaintiff and the other members of the Class known of the Unsupported Chamber Defect within the Class Guns, they would not have purchased the Class Guns or would have paid less for the Class Guns.

97.    Through their omissions regarding the Unsupported Chamber Defect within the Class Guns, the Glock Defendants intended to induce, and did induce, Plaintiff and the other Class members to either purchase a Class Gun that they otherwise would not have purchased, or pay more for a Class Gun than they otherwise would have paid.

98.    As a direct and proximate result of the Glock Defendants' omissions, Plaintiff and the other Class members have incurred damages in an amount to be determined at trial.

99.    Plaintiff, on behalf of herself and the Class, demands judgment against the Glock Defendants for compensatory damages for herself and each member of the Class, for the establishment of a common fund, plus attorneys' fees, interest and costs.

## COUNT THREE

### UNJUST ENRICHMENT

100.    Plaintiff re-alleges and re-incorporates all preceding paragraphs.

101.    Glocl Defendants misrepresented the Class Guns, the misrepresentations, falsehoods and deceptions alleged herein.

102.    Plaintiff has suffered injury in fact and lost money or property as a result of Glock Defendants' conduct because she purchased a Class Gun in reliance on Glock Defendants'

28

misrepresentations, deceptions and falsehoods alleged herein but did not receive a Class Gun as represented.

103. Glock Defendants knew that the Class Guns could not conform to their representations.

104. Glock Defendants mispresented, concealed, and omitted material information concerning the Class Guns.

105. The facts mispresented, concealed, and omitted by Glock Defendants are material because a reasonable consumer would have considered them to be important in deciding whether to purchase a Class Gun or pay a lower price.

106. Glock Defendants mispresented, concealed, and omitted material information concerning the Class Guns in order to induce Plaintiff and Class members to purchase the Class Guns at a substantially higher price than what they would otherwise have paid.

107. Plaintiff and Class members reasonably and justifiably relied on Glock Defendants' representations and advertisements when purchasing Class Guns.

108. Plaintiff and Class members would not have purchased Class Guns if they knew the truth, or they would have only paid substantially less.

109. Plaintiff and Class members conferred substantial benefits on Glock Defendants by purchasing Class Guns at a premium without receiving a product that conformed to Glock Defendants' representations.

110. As a result of its deception, Glock Defendants has been able to reap unjust revenue and profit.

111. Glock Defendants knowingly and willingly accepted and enjoyed these benefits.

112.    Glock Defendants' retention of these benefits would be inequitable because Glock Defendants obtained benefits to the detriment of Plaintiff and Class members when Plaintiff and Class members did not obtain their promised benefits.

113.    Plaintiff, on behalf of herself, all others similarly situated, and the general public, seeks restitution as a result of Glock Defendants' unjust conduct.

## PRAYER FOR RELIEF

Plaintiff, on behalf of herself and the Class she seeks to represent, prays for a judgment against the Glock Defendants as follows:

1.    An Order certifying this action to proceed as a class action, and naming Plaintiff as the representative for the Class and their counsel as class counsel;

2.    An award, where allowable, in favor of Plaintiff and the Class that includes compensatory, exemplary or punitive damages, treble damages, and statutory damages, including interest thereon, in an amount to be proven at trial;

3.    An award, where allowable, in favor of Plaintiff and the Class for compensatory damages that includes the cost of repair, replacement or modification of the Defect to render safe the Class Guns;

4.    Declare that the Glock Defendants are financially responsible for notifying members of the Class of the Defect with the Class Guns;

5.    An Order enjoining the Glock Defendants from further deceptive advertising, marketing, distribution, and sales practices with respect to the Class Guns and requiring the Defendants to repair and/or replace Plaintiff and the other Class members' Class Guns with a suitable alternative pistol of Plaintiff's and Class members' choosing.

30

6.      Declaring that the Glock Defendants must disgorge, for the benefit of all Class members, all or part of the ill-gotten profits it received from the sale of the Class Guns, or order the Glock Defendants to make full restitution to Plaintiff and the Class members.

7.      An Order permanently enjoining the Glock Defendants from continuing to engage in the unlawful and inequitable conduct alleged herein;

8.      Granting Plaintiff and the Class members all equitable remedies permitted by law against the Glock Defendants;

9.      An award of attorneys' fees and costs, as allowed by law;

10.     An award of pre-judgment and post-judgment interest, as provided by law;

11.     Leave for Plaintiff and the Class members to amend the Complaint to conform to the evidence produced at trial; and

12.     Such other relief against the Glock Defendants as the Court may deem just and proper under the circumstances and applicable law.

**DEMAND FOR JURY TRIAL**

Plaintiff respectfully requests a jury on all triable issues.

Dated:  March 17, 2026.          **CUNEO GILBERT FLANNERY & LADUCA, LLP**

By:  s/  Robert K. Shelquist
Robert K. Shelquist
5775 Wayzata Blvd., Suite 620
St. Louis Park, MN 55416
Telephone: (612) 254-7288
rkshelquist@cuneolaw.com

Charles LaDuca *(pro hac vice to be filed)*
Brendan S. Thompson *(pro hac vice to be filed)*
David Black *(pro hac vice to be filed)*
**CUNEO GILBERT FLANNERY & LADUCA, LLP**
2445 M Street NW, Suite 740
Washington, DC 20037
Telephone: (202) 789-3960
charlesl@cuneolaw.com
brendant@cuneolaw.com
dblack@cuneolaw.com

Charles Barrett *(pro hac vice to be filed)*
**CUNEO GILBERT FLANNERY & LADUCA, LLP**
4235 Hillsboro Pike, Suite 300
Nashville, TN 37215
Telephone: (202) 844-3647
cbarrett@cuneolaw.com

Nicholas Panayotopoulos *(pro hac vice to be filed)*
Alexander Heydemann *(pro hac vice to be filed)*
**WEINBERG WHEELER HUDGINS GUNN &
DIAL LLC**
3344 Peachtree Road, NE, Suite 2400
Atlanta, GA 30326
Telephone: (404) 876-2700
aheydemann@wwhgd.com
npanayo@wwhgd.com

Robert K. Lewis *(pro hac vice to be filed)*
Amy M. Lewis *(pro hac vice to be filed)*
**LEWIS AND LEWIS
TRIAL LAWYERS, PLC**
21850 N. Alma School Road,
Suite 103-637
Scottsdale, AZ 85262
Telephone: 602-889-6666
amy@lewislawfirm.com
rob@lewislawfirm.com

32

Shannon M. McNulty
**CLIFFORD LAW OFFICES, P.C.**
120 N. LaSalle, 36th Floor
Chicago, IL 60602
Telephone: (312) 899-9090
smm@cliffordlaw.com

**Attorneys for Plaintiffs**